# BMW Financial Services NA, LLC
## Motor Vehicle Retail Installment Contract - Pennsylvania

### 1. PARTIES

| BUYER(S) WINONA CHAN DAM | SELLER |
|---|---|
| Name | Name BMW of Fort Washington |
| Address (include County and Zip Code) | Address |
| 1829 S CARLISLE ST | 500 Pennsylvania Ave |
| PHILADELPHIA PA 19145 | Fort Washington PA 19034 |
| Billing Address (if different) | |
| | DATE OF CONTRACT 03/14/2023 |

This Motor Vehicle Retail Installment Contract ("Contract") is entered into between the buyer(s) ("Buyer") and the seller ("Seller") named above. Unless otherwise specified or required by context, "I", "me" and "my" refer to the Buyer and "you" and "your" refer to the Seller or Seller's assignee. "Vehicle" refers to the vehicle described below. I promise to pay the Seller the Amount Financed plus the Finance Charge calculated at the Annual Percentage Rate shown below according to the Payment Schedule shown below. I acknowledge that I am purchasing the Vehicle from the Seller on an installment basis and accept the Vehicle in its present condition, including all its equipment, parts and accessories.

### 2. VEHICLE

| ☐ New ☑ Used | Year 2017 | Make BMW | Model 320i xDrive Sedan | Vehicle Identification Number WBA8E5G3XHNU45293 | Odometer Reading 63339 | ☑ Personal Use ☐ Business Use |

☐ CD Player ☐ _____(specify)  ☐ _____(specify)  ☐ _____(specify)

### 3. CREDIT DISCLOSURES                                                                 e=estimate

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. | Total Sale Price The total cost of my purchase on credit, including my down payment of $ 10,000.00 |
|---|---|---|---|---|
| 17.99 % | $ 6,588.77 e | $ 10,073.47 | $ 16,662.24 e | $ 26,662.24 e |

### PAYMENT SCHEDULE

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 231.42 | Monthly, beginning 04/28/2023 |
| 1 Balloon Payment (if applicable) | | |

**SECURITY.** I am giving a security interest in the Vehicle.
**LATE CHARGE.** If all or any portion of a payment is more than 10 days late, I will be charged 2% of the past due amount.
**PREPAYMENT.** If I pay off this Contract early, I will not have to pay a penalty.

Please read all pages of this Contract, including all pages, for additional information on security interests, nonpayment, default, and the right to require repayment in full before the scheduled maturity date.

If I do not meet my contract obligations, I may lose the Vehicle, any proceeds of the Vehicle, the loss proceeds of any vehicle insurance, or any proceeds, cancellation refunds or rights of any service or mechanical breakdown protection contract, maintenance contract, extended warranty, or other optional products, if the cost is included under this Contract.

### 4. BALLOON PAYMENT

If a Balloon Payment is shown in the Payment Schedule in Section 3 above, this Section 4 and Section 10 below apply. If a Balloon Payment is shown in Section 3, I understand that the last scheduled payment of this Contract is a Balloon Payment and is substantially larger than each of the other scheduled payments. The due date and scheduled amount of this Balloon Payment are shown in the Payment Schedule in Section 3. (See also Section 11.A.) Provided that I am not in default under this Contract (see Section 14), I can choose one of the options described in Section 10 to satisfy the Balloon Payment when it is due.

If I choose the Refinance Option in Section 10 of this Contract, I agree that when the Balloon Payment is due, I may refinance the Balloon Payment at the Annual Percentage Rate of 17.99 percent in 72 monthly payments of approximately $ 0 each until paid in full.

If I choose the Return (Sale) Option in Section 10 of this Contract, I agree that I may incur the following fees: (A) a Disposition Fee of $ 0 ; (B) Excess Mileage Fees of 0 ¢ for each mile driven in excess of 0 miles per year; and (C) the Excess Wear and Use Charge as explained in Section 10.C.

## 5. ITEMIZATION OF THE AMOUNT FINANCED

**A. CASH PRICE**
- (1) Cash Price of Vehicle and Accessories $ 18,000.00
- (2) Sales Tax + 1,440.00
- (3) Other (Describe) N/A + 0.00
- (4) Other (Describe) _____ + 0.00
- (5) Other (Describe) _____ + 0.00
- (6) **Including Optional Service Contracts and/or Extended Warranties in the Amount of:*** + 0.00 *
- (7) Total Cash Price = 19,440.00

**B. DOWN PAYMENT**
- (1) Net Value of Trade-in
  (Gross Allowance $ 0.00   Payoff $ 0.00  )
  (Year___ Make___ Model___) $ 0.00
- (2) Cash Down Payment + 10,000.00
- (3) Manufacturer's Rebate Assigned to Seller + 0.00
- (4) Other (Describe) _____ + 0.00
- (5) Total Down Payment = 10,000.00

**C. UNPAID BALANCE OF CASH PRICE**
- (A(7) minus B(5)) $ 9,440.00

*Seller and/or Seller's affiliates may retain or receive a portion of these amounts.

e= estimate

**D. AMOUNTS PAID TO OTHERS ON MY BEHALF**
- (1) To Insurance Companies For:*
  - (a) Credit Life/Accident and Health Insurance $ 0.00 *
  - (b) Other Insurance (Describe)_____ + 0.00 *
  Term ___0___ mo.
- (2) To Public Officials:
  - (a) License, Title, and Registration Fees $ 130.00
  - (b) Filing Fees + 20.47
  - (c) Other Official Fees (Describe)_____ + 0.00
- (3) Other Charges:*
  - (a) To Dealer  For Doc Fee + 449.00 *
  - (b) To Dealer  For Temporary Tag F + 34.00 *
  - (c) To ___ For ___ + 0.00 *
  - (d) To ___ For ___ + 0.00 *
  - (e) To ___ For ___ + 0.00 *
  - (f) To ___ For ___ + 0.00 *
  - (g) To ___ For ___ + 0.00 *
  - (h) To ___ For ___ + 0.00 *
- (4) Total Amounts Paid to Others on My Behalf = 633.47

**E. AMOUNT FINANCED** (C plus D(4))  $ 10,073.47
**F. FINANCE CHARGE** + 6,588.77 e
**G. TIME BALANCE** (E plus F) $ 16,662.24 e
**H. Payment Schedule:** See Section 3 above.

**THE SELLER MAY ASSIGN THIS CONTRACT AND RECEIVE A FEE OR OTHER CONSIDERATION FOR FACILITATING THIS FINANCING.**

## 6. SERVICE CONTRACT

**A service contract is not required to obtain credit and will not be provided unless I sign and agree to pay the cost.** The service contract issued by the Provider will describe the terms and conditions in further detail. By signing below, I agree to purchase the service contract for the term and cost indicated.

Provider: N/A  Cost: $ 0.00  Term: 0 months or 0 miles, whichever occurs first.
Provider: ___  Cost: $ ___  Term: ___ months or ___ miles, whichever occurs first.
Provider: ___  Cost: $ ___  Term: ___ months or ___ miles, whichever occurs first.
Provider: ___  Cost: $ ___  Term: ___ months or ___ miles, whichever occurs first.
Provider: ___  Cost: $ ___  Term: ___ months or ___ miles, whichever occurs first.

X _____   X _____
Buyer's Signature            Buyer's Signature

## 7. CREDIT INSURANCE

**Credit life or credit accident and health insurance is not required to obtain credit and will not be provided unless I sign and agree to pay the premium.** My decision to obtain (or not obtain) credit insurance is not a factor in granting credit and does not affect your credit decision. I may also use alternative coverage or buy insurance elsewhere. The policies or certificates issued by the insurer will describe the terms and conditions in further detail. By signing below, I agree to pay for the following insurance for the terms and premiums indicated.

☐ I want Credit Life Insurance (One Buyer only)   Term ___0___ mos. Premium $ 0.00  Insured Name:_____
☐ I want Joint Credit Life Insurance              Term ___0___ mos. Premium $ 0.00  Insured Name:_____
                                                                                     Insured Name:_____
☐ I want Credit Accident and Health Insurance     Term ___0___ mos. Premium $ 0.00  Insured Name:_____
   (One Buyer only)

Name of Insurer(s):_____

X _____   X _____
Buyer's Signature            Buyer's Signature

Exhibit A  2 of 6

## 8. OPTIONAL GAP CONTRACT ("GAP")

**GAP is not required to obtain credit and I may purchase it from anyone I want who is reasonably acceptable to the Seller.** I may purchase GAP under this Contract by signing below and agreeing to pay the purchase price, shown in Section 5.D above. See my GAP contract for details on the protection it provides.

Term_____0_mos.    Name of GAP Contract_____

X_____    X_____
Buyer's Signature                            Buyer's Signature

## 9. INSURANCE VERIFICATION

I agree to maintain the insurance coverage described in Section 12. I affirm that such insurance is in force on the date of this Contract. I authorize the Seller and its assignees to speak to my insurance agent or company, and any future insurance agents or companies, about my coverage for the Vehicle.

| NATIONWIDE INSURANCE | | | |
|---|---|---|---|
| Insurance Company | Policy No. | Coverage Verified (Center Employee's Initials) | |
| NATIONWIDE INSURANCE | | | |
| Agent Name | Address | Phone No. | |

All matters regarding insurance should sent by e-mail to insuranceinfo@bmwfs.com; or faxed to 888-725-8456.

## 10. BALLOON PAYMENT OPTIONS

This Section applies to the Balloon Payment in the Payment Schedule in Section 3. (See also Section 11.A.) Provided that I am not in default under this Contract (see Section 14), I can choose one of the options described below to satisfy the Balloon Payment when it is due.

**A. PAYMENT OPTION.** I can pay all I owe under this Contract when the Balloon Payment is due and keep the Vehicle.

**B. REFINANCE OPTION.** I may refinance the Balloon Payment at the Annual Percentage Rate and monthly payment terms described in Section 4 of this Contract. To use this option, I must (1) tell you in writing at least 90 days before the Balloon Payment due date that I want to refinance any unpaid amount of the Balloon Payment, and (2) by no later than the Balloon Payment due date, pay you any amounts owed under the Contract on the due date of the Balloon Payment except the Balloon Payment. The amount refinanced will be secured by the Vehicle. I agree to provide proof of vehicle insurance acceptable to you at the time of such refinance. I must apply all proceeds of the refinancing to the amounts due under this Contract.

**C. RETURN (SALE) OPTION.** I can satisfy the Balloon Payment by returning (selling) the Vehicle to you under the following agreement. To use this option, I must satisfy the following requirements:

(1) Tell you in writing at least 90 days before the Balloon Payment due date that I want to return (sell) the Vehicle to you; and also

(2)(a) By no later than the Balloon Payment due date, pay you any amounts owed under the Contract on the due date of the Balloon Payment except the Balloon Payment; (b) Deliver the Vehicle to you at a reasonable place you tell me; (c) Deliver all documents, properly signed, needed to transfer clean title to the Vehicle to you or to a person you tell me to transfer it to; (d) Pay you the Disposition Fee described in Section 4 above, by the date indicated on an invoice you will provide me; (e) Pay you the Excess Mileage Fees, if any, described in Section 4 above, by the date indicated on an invoice you will provide me; and (f) Pay you the Excess Wear and Use Charge, if any, described below, by the date indicated on an invoice you will provide me. You will release me from my obligation to pay the Balloon Payment when I meet all of these requirements. If I do not meet all of the conditions described above, I will not be able to exercise the Return (Sale) Option and I will be required to pay all I owe under this Contract when the Balloon Payment is due, in full (unless the Balloon Payment refinance option described in Section 10.B above is available and I choose that refinance option).

The documents required under Section 10.C.(2)(c) include (without limitation) a bill of sale, the Vehicle's certificate of title, an odometer disclosure statement, and smog, safety inspection and other certificates and documents for the purpose of transferring title to the Vehicle from me to you or your designee. By returning the Vehicle under the Return (Sale) Option, I appoint you my attorney-in-fact under the provisions in Section 15, and I also agree to give you at your request an original power of attorney authorizing you or your designee to complete a bill of sale, certificate of title, and similar types of documents and certificates on my behalf to transfer title to the Vehicle from me to you or your designee.

**EXCESS WEAR & USE.** If I am not in default under this Contract (see Section 14) and otherwise qualify for and choose the Return (Sale) Option, I agree to pay you your estimated costs for repairs to the Vehicle that are not the result of normal wear and use, whether or not you actually repair the Vehicle. Excess Wear and Use includes, but is not limited to:

(a) inoperative electrical or mechanical parts;
(b) dented, scratched, chipped, rusted, pitted, broken or mismatched body parts, paint, vehicle identification items, trim or grill work;
(c) non-functioning, scratched, cracked, pitted or broken glass or lights;
(d) missing equipment, parts, accessories or adornments;
(e) torn, damaged, burned or stained interior;
(f) any damage that makes the Vehicle unlawful or unsafe to drive;
(g) damage due to installation or removal of non-manufacturer, after-market or replacement parts;
(h) damage (including damage to the engine) due to failure to maintain the Vehicle in accordance with Section 13.B; or
(i) tires with tread of less than 1/8" remaining at the shallowest point, or tires not all of the same grade, quantity and quality as those delivered with the Vehicle.

If I fail to pay any Excess Wear and Use Charges, Excess Mileage Fees, or other charges owed under this Contract within thirty days of the due date indicated on the invoice therefore, I will pay you interest on the unpaid balance of these charges at the rate of 18 percent per annum, if permitted by law, or the maximum rate permitted, if less, until paid in full.

## 11. PAYMENTS AND SECURITY INTEREST

**A. SIMPLE INTEREST CONTRACT.** I understand that this is a simple interest contract. The amount of the Finance Charge and the amount owed on this Contract on the final payment due date shown in Section 3 may vary depending upon when payments are received. The earlier that payments are received before each due date, the less Finance Charge I owe. The later that payments are received after each due date, the more Finance Charge I owe. Payments are first credited to accrued Finance Charge and then to the unpaid balance of the Amount Financed. After my last payment, you will advise me of any amounts owed or refund any amounts owed to me.

**B. LATE CHARGE.** If you do not receive my total monthly payment or any other payment within 10 days after it is due, I agree to pay the late charge described in Section 3 of this Contract, but not exceeding any limit under applicable law.

**C. SECURITY INTEREST.** I grant you a security interest in: (1) the Vehicle; (2) all proceeds of such property; and (3) to the extent permitted by state law, the loss proceeds of any vehicle insurance and, if the cost is included in the monthly payment under this Contract, the proceeds, cancellation refunds or rights of any service or mechanical breakdown protection contract, maintenance contract, extended warranty, or any other optional products. This security interest secures payment and performance of my obligations under this Contract, or any extensions of this Contract, including any indebtedness subsequently arising because of my failure to perform such obligations.

I agree to fully cooperate with you to perfect your security interest in the Vehicle, including, but not limited to, paying applicable titling and registration fees, obtaining a smog and/or safety inspection from an authorized inspection station, obtaining applicable inspections of the vehicle identification number from the appropriate law enforcement or other government official(s), and providing you with inspection certificates and other documents necessary to perfect your security interest.

## 12. VEHICLE INSURANCE

**A. REQUIREMENTS.** For the term of this Contract I must obtain and maintain insurance coverage for loss of or physical damage to the Vehicle (comprehensive, collision, fire and theft coverage) in the amount equal to the actual cash value of the Vehicle. The maximum deductible allowed for collision and comprehensive coverages is $1000. **I have the option of obtaining this insurance through an insurer of my choice that is acceptable to you.** I must designate you as loss payee on such insurance. The policy must provide you with at least 30 days advance notice of any amendment to or cancellation of coverage. I must furnish satisfactory evidence that the Vehicle continues to be adequately covered by physical damage insurance for the entire term of this Contract. If the Vehicle is lost or damaged, you may at your option use any insurance settlement to reduce what I owe on this Contract.

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.**

**B. INSURANCE OR OTHER CHARGES RETURNED.** I agree that if you receive any refund on optional insurance, maintenance, service, or any other contracts or products financed under this Contract, you may use the refund to reduce the amount I owe on this Contract. Any remaining credits totaling $1 or more will be refunded to me.

## 13. WARRANTIES AND VEHICLE USE

**A. WARRANTIES. The Seller is not offering any express warranties unless the Seller has given a written warranty to me. If the Seller extends, or the Vehicle's manufacturer extends, a written warranty or service contract covering the Vehicle within 90 days from the date of this Contract, I get implied warranties of merchantability and fitness for a particular purpose covering the Vehicle. If not, the Seller specifically disclaims any implied warranties of merchantability and fitness for a particular purpose covering the Vehicle.**

**B. VEHICLE USE.** I agree that I will: (1) not garage the Vehicle at an address other than the address shown on this Contract without your written consent and will notify you of changes in my address; (2) not sell the Vehicle without your written consent; (3) except for less than 30 days in Canada, not operate the Vehicle outside of the contiguous United States and Alaska and Hawaii; (4) not allow a lien to be placed upon the Vehicle; (5) not abandon the Vehicle or use it for hire or illegally; (6) maintain the Vehicle in good condition and have the Vehicle serviced and maintained in accordance with the manufacturer's recommendations and specifications, so long as I have obligations under this Contract; (7) permit you to inspect the Vehicle at any reasonable time; and (8) pay when due all taxes and assessments levied on the Vehicle. Should I fail to promptly pay any lien, encumbrance or taxes on the Vehicle, you may do so on my behalf. In such event, I must immediately reimburse you for the cost thereof. If I do not immediately reimburse you, such cost, plus interest at a rate not to exceed the Annual Percentage Rate shown in Section 3 of this Contract, will be added to the amount I owe under this Contract.

## 14. DEFAULT

**A. DEFAULT.** I will be in default under this Contract if: (1) I fail to make any payment in full when due or fail to pay any other charge; (2) I fail to keep any of my promises under this Contract or in any other agreement I have with the Seller or Seller's assignee; (3) I die, am declared incompetent or become insolvent, a bankruptcy petition is filed by or against me, or I dissolve or cease active business affairs; (4) I give the Seller false or misleading information in my credit application or any other document; (5) the Vehicle is destroyed, stolen or damaged beyond repair; (6) I fail to keep required insurance in force; (7) the Vehicle is subject to or threatened by seizure, confiscation, levy, or other involuntary transfer by governmental, administrative or legal process; (8) my driver's license expires or is suspended, revoked, canceled or is otherwise restricted; or (9) anything else happens that you reasonably believe in good faith endangers the Vehicle.

**B. REMEDIES.** If I am in default, you may demand that I pay all amounts I owe under this Contract at once (accelerate), and may pursue any and all of your other rights and remedies available under the law. Your remedies can be used singularly or in any combination. In the event of a default, you may also repossess the Vehicle as permitted by law, in which event I may be entitled to get it back (redeem) by making timely payment of charges (such as costs of retaking, repairing, and storing the Vehicle) incidental to the repossession to the extent permitted by law plus the accelerated amount owed under this Contract, including Finance Charges and any other fees, charges, and amounts owed under this Contract, in full. If at the time of repossession I am in default for 15 days or less, I do not need to pay the costs of retaking, repairing and storage in order to redeem the Vehicle. My right to redeem the Vehicle ends when you sell the Vehicle as and in the manner permitted by applicable state law. In the event you repossess the Vehicle, you may, but are not required to, reinstate the Contract and return the Vehicle to me provided I pay all past due installments, accrued default charges, any applicable and permitted cost of suit incurred under the Contract, and if my default at the time of repossession exceeded 15 days, the expenses of retaking, repairing, and storing the Vehicle.

If the Vehicle is sold, the proceeds will be applied first to reasonable expenses of repossessing, repairing, storing and selling the Vehicle, including attorneys' fees and court costs if repossession was accomplished by legal process, and then to all amounts due under this Contract. If there is any money left over, it will be paid to me, subject to the rights of any other secured parties. If the proceeds of the sale of the Vehicle are insufficient to pay all amounts due to you, including without limitation all permitted costs and expenses of repossession and sale, I will be liable for any deficiency to the extent permitted by law. Any personal property of mine in or attached to the Vehicle which is not subject to your security interest shall be held by you without liability if the Vehicle is repossessed. Unless I provide you with written demand delivered by certified mail within 30 days after you mail me a notice of repossession of the Vehicle, I waive any claims I may have to my personal property.

If the Vehicle has an electronic tracking device, I agree that you may use the device to find the Vehicle.

This Contract may contain charges for optional insurance, service or mechanical breakdown contract, extended warranty, maintenance contracts, or any other optional products. If you demand that I pay all I owe at once (accelerate) or you repossess the Vehicle or if the Vehicle is a total loss because it is confiscated, damaged, lost or stolen, I agree that you may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce the amount I owe under this Contract.

## 15. POWER OF ATTORNEY

I appoint you, to the extent permitted by law, through your officer or employee, as my attorney-in-fact. My grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations I owe under this Contract are paid in full. As my attorney-in-fact, you can sign on my behalf all Certificates of Ownership, Registration Cards, applications, affidavits, or any other documents required to register and properly perfect your security interest in the Vehicle; act on my behalf in insurance matters relating to the Vehicle, including, but not limited to, the power to endorse insurance proceeds checks or drafts on my behalf; and cancel any Credit Life, Credit Accident and Health, Guaranteed Automotive Protection Coverage, Extended Warranty, or any other optional products financed under this Contract, and apply the refunded premium or cost to my outstanding balance if I am in default. Should an original power of attorney be necessary to accomplish any of the preceding, I agree to execute a separate identical power of attorney document and provide you with the same.

## 16. ADDITIONAL TERMS

I understand that: (A) I have no right to assign any of my rights under this Contract, although you may assign your interests under this Contract without my consent; (B) you may waive or delay the enforcement of your rights under this Contract without affecting your rights on future defaults; (C) any portion of this Contract which may be held unenforceable shall not affect the enforceability of other portions of this Contract; (D) if more than one buyer has signed this Contract, each one will be jointly and severally liable for all obligations under this Contract; (E) all correspondence and notices will be sent to me at my Billing Address shown on this Contract unless I give you a different address in writing; and (F) except as provided in the Arbitration Clause below (Section 18), this Contract will be governed by applicable federal law and the laws of the state of the Seller's place of business shown in Section 1 of this Contract. **This Contract describes all of the agreements with respect to the retail installment sale of the Vehicle between you and me and all prior agreements, whether oral or in writing, are superseded. This contract cannot be changed or terminated by any oral agreement.**


**Summary Notice Regarding Prepayment, Rebate of Finance Charge, and Reinstatement:** I may prepay all or part of the amount I owe under this Contract without penalty. If I do so, I only have to pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of my payment. Because this is a simple interest contract, there are no unearned Finance Charges to rebate. If I default and you repossess the Vehicle, you may, at your option, allow me to reinstate the Contract and get the Vehicle back before you sell it by paying all past due payments, late charges, and expenses (see Section 14.B).

## 17. FTC NOTICES

If the Vehicle is a used vehicle, the following notice applies:

**THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

The following notice does not apply if the Vehicle is purchased for business use:

**NOTICE - ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

## 18. ARBITRATION CLAUSE

**PLEASE REVIEW - IMPORTANT - AFFECTS OUR LEGAL RIGHTS**

**NOTICE:** Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial. If a dispute is arbitrated, I will give up my right to participate as a class representative or class member on any Claim I may have against you including any right to class arbitration or any consolidation of individual arbitrations. Discovery and rights to appeal in arbitration are generally more limited than in a lawsuit, and other rights you and I would have in court may not be available in arbitration.

"Claim" broadly means any claim, dispute or controversy, whether in contract, tort, statute or otherwise, whether preexisting, present or future, between me and you or your employees, officers, directors, affiliates, successors or assigns, or between me and any third parties if I assert a Claim against such third parties in connection with a Claim I assert against you, which arises out of or relates to my credit application, the sale, purchase, lease, or condition of the Vehicle, this Contract, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Contract). Any Claim shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action. "Claim" does not include any dispute or controversy about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver set forth below and/or this sentence); all such disputes or controversies are for a court and not an arbitrator to decide. But any dispute or controversy that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide. In addition, "Claim" does not include any individual action brought by me in small claims court or my state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Claim" also does not include the exercise of any self-help remedies; any individual action in a court limited to preventing another party from exercising a self-help remedy if the action does not involve a request for damages or any other monetary relief of any kind; or any action for replevin of the Vehicle. Moreover, this Arbitration Clause will not apply to any Claims that are the subject of (a) a class action filed in court that is pending as of the effective date of this Arbitration Clause in which I am alleged to be a member of the putative class (however, you and I will continue to be bound by any prior Arbitration Clause) or (b) a motion to compel arbitration filed by you against me before the effective date of this Arbitration Clause pursuant to a prior Arbitration Clause (however, you and I will continue to be bound by any prior Arbitration Clause).

**Class Action Waiver.** Notwithstanding any other provision of this Contract or Arbitration Clause, if either you or I elect to arbitrate a Claim, neither you nor I will have the right: (a) to participate in a class action, mass action, private attorney general action or other representative action in court or in arbitration, either as a class representative or class member; or (b) to join or consolidate Claims with claims of any other persons. No arbitrator shall have authority to conduct any arbitration in violation of this provision. (Provided, however, that the Class Action Waiver does not apply to any lawsuit or administrative proceeding filed against you by a state or federal government agency even when such agency is seeking relief on behalf of a class including me. This means that you will not have the right to compel arbitration of any claim brought by such an agency.) The Class Action Waiver is material and essential to the arbitration of any Claims between the parties and is nonseverable from this Arbitration Clause. If the Class Action Waiver is limited, voided or found unenforceable, then this Arbitration Clause (except for this sentence) shall be null and void with respect to such proceeding, notwithstanding any other provision of this Contract, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. The parties acknowledge and agree that under no circumstances will a class action be arbitrated.

If you or I choose to have a Claim decided by arbitration, the Claim will be arbitrated by a single arbitrator. The party commencing arbitration may choose the American Arbitration Association ("AAA"), 120 Broadway, New York, NY 10271, www.adr.org, 1-800-778-7879 or JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, 1-800-352-5267 to administer the arbitration. The rules and forms of the AAA and JAMS may be obtained on their websites or by writing to these organizations at the addresses listed above. Either you or I may request an expedited hearing under the applicable rules. If the AAA and JAMS are unable or unwilling to serve as administrator, or we mutually agree not to utilize the AAA and JAMS for whatever reason, we may agree upon another arbitration administrator or, if we are unable to agree, a court shall determine the administrator. No company may serve as administrator, without the consent of all parties, if it adopts or has in place any formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Clause. If the chosen administrator's rules or other provisions of this Contract (including any other arbitration provision relating to this Contract) conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. If a party files a lawsuit in court asserting any Claim that is subject to arbitration and the other party files a motion to compel arbitration with the court which is granted, it will be the responsibility of the party prosecuting the Claim to select an arbitration administrator in accordance with this paragraph and commence the arbitration proceeding in accordance with the administrator's rules and procedures.

Arbitrators shall be attorneys with at least ten years of experience or retired judges and shall be selected pursuant to the applicable rules. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court or by state or local laws that relate to arbitration proceedings. The arbitrator will honor statutes of limitation and claims of privilege recognized under applicable law. In determining liability or awarding damages or other relief, the arbitrator will follow the applicable substantive law, consistent with the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), that would apply if the matter had been brought in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts). The arbitrator may award any damages or other relief or remedies permitted by applicable law including equitable, temporary and/or provisional remedies. The arbitrator shall write a brief explanation of the grounds for the decision. Any arbitration hearing that I attend shall be conducted at a place reasonably convenient to where I reside. Any court having jurisdiction may enter judgment on the arbitrator's award.

In any arbitration that I have commenced against you, if the total amount of my Claim(s) is less than $25,000: (a) you will pay any and all fees and costs of the arbitration administrator and/or the arbitrator if I make a written request for you to pay such fees; and (b) you will pay my reasonable attorneys and expert witness fees and costs if and to the extent I prevail in the arbitration in an amount as determined by the arbitrator. Except as provided above, we shall each pay such fees and costs of the arbitration administrator and/or the arbitrator as provided by the rules of the arbitration administrator, including, if applicable, the arbitration administrator's rules or fee and cost allocations for consumer-related arbitrations. Except as provided above, you and I shall each be responsible for our own attorneys' and expert witness fees, unless such fees are awarded in the arbitration by the arbitrator under applicable state or federal law.

The arbitrator's award shall be final and binding on all parties, except for any right of appeal provided by the FAA. If the amount of the Claim exceeds $100,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $100,000, however, any party can, within 30 days after the entry of the award by the arbitrator, appeal the award to a three-arbitrator panel administered by the

administrator. The panel shall reconsider anew any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Clause to "the arbitrator" shall mean the panel if an appeal of the arbitrator's decision has been taken. The appealing party shall be responsible for the filing fee and other arbitration costs for the appeal panel, which fee and costs may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Any final decision of the appeal panel is subject to judicial review only as provided under the FAA.

You and I may retain any rights to self-help remedies, such as repossession. Neither the exercise of any self-help remedies nor any individual action in court by one party limited solely to preventing the other party from using a self-help remedy and without any claim for damages or any other monetary or equitable relief is subject to arbitration. Neither you nor I waive the right to arbitrate by using self-help remedies.

This Arbitration Clause shall survive any termination, payoff, or transfer of this Contract and shall also survive any bankruptcy to the extent consistent with applicable bankruptcy law. If any part of this Arbitration Clause, other than the Class Action Waiver, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. This Contract involves interstate commerce and this Arbitration Clause and any arbitration hereunder shall be governed by the FAA and not by any state law concerning arbitration. However, the governing law as to the substantive issues concerning this Contract and the Vehicle shall be the law of the state of the Seller's place of business shown in Section 1 of this Contract and applicable federal law.

Notwithstanding any other provision for notice contained in this Contract, any arbitration Claim or other notice provided under the rules of the arbitration administrator will be given to you at the following address: If my Claim is against the Seller, I agree that notice of my Claim will be given to the Seller at the address specified in Section 1 of this Contract. If my Claim is against the Assignee (designated in Section 20 of this Contract), I agree that notice of my Claim will be given at 1400 City View Drive, Columbus, Ohio 43215. If my Claim is against both the Seller and the Assignee, I agree that both the Seller and the Assignee will be notified of my Claim at the addresses indicated herein.

**Electronic Contracting and Signature Acknowledgment.** I agree that (i) this Contract is an electronic contract executed by me using my electronic signature, (ii) my electronic signature signifies my intent to enter into this Contract and that this Contract be legally valid and enforceable in accordance with its terms to the same extent as if I had executed this Contract using my handwritten signature, and (iii) the authoritative copy of this Contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by you for the storage of Authoritative Copies of electronic records, which shall be deemed held by you in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted into a paper copy which is marked by you as the original (the "Paper Contract"), then I acknowledge and agree that (1) my signing of this Contract with my electronic signature also constitutes issuance and delivery of such Paper Contract, (2) my electronic signature associated with this Contract, when affixed to the Paper Contract, constitutes my legally valid and binding signature on the Paper Contract, and (3) subsequent to such conversion, my obligations will be evidenced by the Paper Contract alone.

## 19. BUYER NOTICES AND CONTRACT SIGNATURES

**IMPORTANT: READ THE TERMS ON ALL PAGES OF THIS CONTRACT BEFORE SIGNING BELOW.**

By signing below, I agree to all the terms of this Contract. I also acknowledge and agree to the Arbitration Clause in Section 18 of this Contract.

**If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.**

**NOTICE TO BUYER: Do not sign this contract in blank. You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights. Any holder of this consumer credit contract is subject to all claims and defenses which the buyer could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the buyer shall not exceed amounts paid by the buyer hereunder.**

Buyer's Signature: X _[signature]_    Buyer's Signature: X

**BY SIGNING BELOW, I ACKNOWLEDGE RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS CONTRACT AT THE TIME OF SIGNING.**

Buyer's Signature: X _[signature]_    Buyer's Signature: X

## 20. SELLER SIGNATURE

The authorized signature of the Seller has the effect of: (1) acknowledging that no representations or warranties beyond those presented in this Contract have been made; (2) confirming that no written or oral representations have been made by or to the Buyer that can be used as a defense to this Contract; (3) accepting the terms and conditions of this Contract; (4) acknowledging verification of the existence of the insurance coverage required by this Contract with the Buyer's insurance agent; (5) assigning this Contract to BMW Bank of North America, a wholly owned subsidiary of BMW Financial Services NA, LLC (collectively "Assignee"), 1400 City View Drive, Columbus, Ohio 43215; and (6) acknowledging that the Center Agreement in place with Assignee governs this transaction. The Seller shall not be an agent of Assignee for any purpose.

Authorized Signature: X _[signature]_    Title: Authorized Signer

PDP ELECTRONIC TITLE DOCUMENT

Exhibit B

ELT*PA      : ELT - PENNSYLVANIA

Title #    : 82211294                           Title Type    :
Issue Date:                                     Lic/Tag/Control #:

VIN . . . . . . . :    WBA8E5G3XHNU45293

Vehicle Info. . . :    2017 BMW 320 SDN

Odometer Reading :     0063339
         Date   . :
         Status  :

Owner Information . . :    DAM,WINONA CHAN
Co-Owner . . . . . :

Owner address . . . :    1829 S CARLISLE ST

                         PHILADELPHIA
                         PA      19145

Lienholder Information:  BMW BANK OF NORTH AMERICA
                         5550 Britton Parway

                         Hilliard
                         OH      43026

2nd Lienholder Name    :

ELT Sent Date . . . . :
Lien Type . . . . . . :
Owner Driver License# :

Brand code . . . . :

Release name . . . :
Release address 1  :
Rel City/State/Zip :    ,

PDP Doc Ref :                                                   2/02/24   10:50:53